UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

RANDA L.,[1]

        Plaintiff,

   v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 1:21-cv-01830-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Randa L. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is REVERSED and REMANDED for immediate award of benefits.

**STANDARD OF REVIEW**

    The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion, and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 2013, through her date last insured, December 31, 2017. Tr. 18. At step two, the ALJ determined plaintiff suffered from the following severe impairments: hemochromatosis, obesity, osteoarthritis, bilateral lower extremity edema, diabetes type II, anxiety disorder, depressive disorder, and neurocognitive disorder. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff has the capacity to perform light work, except:

> [S]he can stand and/or walk for a total of 5 hours in an 8 hour day, and out of that she can only stand one hour at a time. There is no limitation on sitting. The claimant should never use her bilateral lower extremities to push or pull, such as in operation of foot controls. She can occasionally engage in bilateral overhead reaching; she can frequently reach all other directions. The claimant can continuously handle, finger, and feel with the bilateral upper extremities. She can frequently push/pull bilateral upper extremities. The claimant can occasionally climb ramps/stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally kneel, crouch, stoop, or bend; no crawling. The claimant should have no exposure to vibrations or hazards such as dangerous machinery or heights. She is limited to simple, routing, repetitive job tasks, and occasional interaction with the public, coworkers, and supervisors. She needs a static work environment with few changes in work routines and settings.

Tr. 21.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 28. However, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including bench assembler, hand packer, and marker. Tr. 30. Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

### I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id*. (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, available at 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as

4 – OPINION AND ORDER

undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. See SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff has been diagnosed with erythropoietic hemochromatosis, Tr. 428, i.e., "a disease of excess iron absorption," Tr. 690, which the ALJ found is a severe impairment. Tr. 23; Tr. 407 (describing primary diagnosis as "iron overload"); Tr. 399 (describing "patient with hemochromatosis manifested by high ferratin and end organ damage"). The "[k]ey to managing hemochromatosis is control of iron levels." Tr. 399. There is "no benefit in altering diet." Tr. 690. Thus, plaintiff has had to undergo repeated phlebotomies, i.e., blood draws, where up to 500 milliliters of blood were withdrawn each time. Tr. 407, 410, 414, 418, 419, 426, 431, 434, 439; *see* Tr. 690 (recommending phlebotomy every week to every other week to reduce iron levels); Tr. 1955 (2011 chart notes describing phlebotomies on and off for about two years). At one point, plaintiff "underwent aggressive phlebotomy twice weekly to the point of anemia to

reduce ferritin," but the ferritin levels "rebounded and then [she] had another set of phlebotomies."[2]  Tr. 400.

Hemochromatosis can also result in "joint disease . . . due to calcium deposition in the joint," which "unfortunately . . . may not improve[]." Tr. 399.  Plaintiff testified that she suffers from constant pain in her joints every day, with the worst pain in her hips.  Tr. 2273.  In her function report, plaintiff explained that "when the pain is too much," she has to lie down to relieve the pain in her hips.  Tr. 319.  Because the pain is the worst at night, plaintiff wakes up several times during the night and has to nap as needed throughout the day.  Tr. 320.

Plaintiff's complaints of pain are documented throughout her medical records.  Chart notes from 2013 indicate plaintiff "[h]as been having the pain constantly" and "not able to sit or stand for more than 15-30 min due to pain and spasms."  Tr. 1554.  Medical records elsewhere describe that plaintiff was experiencing "hip pain constantly" and "[s]ome days her pain is so severe that she is not able to walk or get out of bed."  Tr. 391.

Plaintiff's joint pain "is most likely due to the hemochromatosis."  Tr. 1576.  For the pain, plaintiff was prescribed oxycodone/Percocet every six or eight hours in 2013, 2014, and 2015, Tr. 685, 1069, 1795-96, hydrocodone/Norco in 2018, Tr. 973, and oxycodone/Percocet in 2019.  Tr. 1836.  Plaintiff was ultimately referred to a pain specialist for "bilateral hip pain, chronic neck pain and multiple joint pain attributed to hemochromatosis."[3]  Tr. 1817, 1839, 1902.

---

[2] The blood draws were not always successful.  *See* Tr. 1930 (describing difficult phlebotomy that took more than 45 minutes).

[3] The ALJ and Commissioner rely on an isolated chart note that indicates "excellent pain control" from a combination of gabapentin and a compounded topical ketoproen/amitriptyline/ketamine cream.  Tr. 1116.  But this chart note pertains to plaintiff's lower extremity pain.  *Id.*  As discussed, plaintiff has been routinely prescribed narcotic medications to manage her joint pain, which is "attributed to hemochromatosis."  Tr. 1902.

At the hearing, a medical expert, Jack Lebeau, M.D., testified that plaintiff has arthritis "[t]hat's very real" and "goes along with this disease" of hemochromatosis. Tr. 2234. Dr. Lebeau explained "it has something to do with the deposition of minerals in the joints and so forth," and confirmed plaintiff "does have that." Tr. 2234. He also stated, "I think we can assume that she's arthritic back then," i.e., during the relevant period," and "[i]t's probably a little worse now than it was then." *Id.*

The ALJ recognized Dr. Lebeau's opinion that plaintiff's hemochromatosis symptoms could include joint pain, as well as episodic memory loss, abdominal pain, and fatigue. Tr. 23. The ALJ discounted plaintiff's complaints of joint pain because "there is little in the way of diagnostic imaging to support degeneration of the joints or arthritic process." Tr. 25. But as the medical records describe, Dr. Lebeau's testimony confirms, and even the ALJ recognizes, plaintiff's hemochromatosis results in the deposit of calcium/minerals in her joints. The record contains no indication that any medical professional ordered medical imaging before prescribing plaintiff with narcotic medication for her joint pain or referring her to a pain specialist to be treated for joint pain "attributed to hemochromatosis." Tr. 1839. Thus, the ALJ erred in using this reason to discount plaintiff's testimony regarding constant pain.

Plaintiff makes several other arguments regarding how the ALJ erred in assessing her subjective symptoms complaints. While the court has examined and considered those arguments, it is ultimately unnecessary to address those issues because plaintiff is otherwise entitled to benefits, as explained below.

**II.    Lay Witness Testimony**

Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into

account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (remaining citation omitted)). Further, the reasons provided also must be "specific." *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)).

Here the ALJ considered plaintiff's mother's third party function report but discounted it because she "does not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms." Tr. 28. The ALJ also stated, "[m]ore importantly, by virtue of her relationship with the claimant, the undersigned cannot consider this source to be a disinterested third party witness whose statement would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." *Id.*

An ALJ may not reject lay witness testimony simply because the witness is a member of the plaintiff's family. *Smolen*, 80 F.3d at 1289. Lay witness testimony also cannot be rejected because the witness is not a medical professional. *Bruce*, 557 F.3d at 116 n.1 (concluding the ALJ erred by rejecting a spouse's lay witness testimony because the spouse "is not knowledgeable in the medical and/or vocational fields"); *see also Wade N. v. Comm'r of Soc. Sec.*, No. 6:19-cv-00605-CL, at *13 (D. Or. Mar. 24, 2021) (holding "[l]ack of medical training is not a germane reason to discount the statements of a lay witness, which by its nature will never be based on such training"). Accordingly, the ALJ failed to provide germane reasons for rejecting the lay witness testimony.

8 – OPINION AND ORDER

### III. RFC

The RFC is the most a claimant can do, despite the claimant's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating the RFC, an ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the hypothetical question posed to the VE.

Here, the ALJ failed to properly credit plaintiff's subjective symptom testimony and the statements of plaintiff's mother; therefore, the court cannot conclude that the RFC accurately reflects plaintiff's limitations. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

### IV. Step Three Finding

Plaintiff contends the ALJ erred at step three by failing to evaluate whether her combination of impairments, including bilateral leg edema, were medically equivalent to a listed impairment and by failing to address testimony by Dr. Lebeau. Pl. Br. 7. Plaintiff also argues the ALJ's error began at step two where the ALJ stated that plaintiff's bilateral leg edema was a severe impairment, but then stated it was not a medically determinable impairment based on Dr. Lebeau's testimony. *Id.* at 11.

9 – OPINION AND ORDER

The court carefully considered these arguments, and closely examined the record and pertinent law regarding medical equivalency. However, again, because plaintiff is otherwise entitled to benefits, it is unnecessary to reach issues pertaining to her edema.

## V.     Remand

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ improperly rejected plaintiff's subjective symptom complaints and lay witness report. Moreover, the record in this case is fully developed; a medical expert was even appointed and provided his opinion.

If the erroneously rejected evidence is properly credited, the ALJ would be required to find that plaintiff is disabled. Plaintiff has testified that she suffers from constant pain for which she is prescribed narcotic medications around-the-clock. She has explained that, despite taking

narcotic pain medications, she suffers from constant pain that is so severe she has to lie down, cannot get out of bed, and has difficulty sleeping during the night, which requires her to make up for lost sleep by napping during the day. When plaintiff's subjective complaints are credited as true, she has described symptoms that would result in absenteeism of two or more days per month, or less than 90% productivity, which the vocational expert testified "generally results in not sustaining competitive work." Tr. 2288-89. Finally, there is no serious doubt as to whether she is disabled based on her history and symptoms of hemochromatosis. Therefore, remand for immediate award of benefits is appropriate.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for immediate award of benefits.

DATED September 8, 2023.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

11 – OPINION AND ORDER